# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**JARROD BRASS,** individually and on behalf of similarly situated persons,

Plaintiff,

**v.**

**SHELDON PIZZA, LLC d/b/a Domino's Pizza, PORT PIZZA, LLC d/b/a Domino's Pizza, and Sheldon Port, Individually,**

Defendants.

**Case No.** 4:25-CV-1611

**Class and Collective Action**

**Demand for Jury Trial**

## CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Jarrod Brass ("Plaintiff"), individually and on behalf of all other similarly situated delivery drivers, brings this Complaint against Defendants, Sheldon Pizza, LLC, Port Pizza, LLC, and Sheldon Port (together, "Defendants"), and alleges as follows:

1. Defendants operate numerous Domino's Pizza franchise stores. Defendants employ delivery drivers who use their own automobiles to deliver pizza and other food items to their customers. However, instead of reimbursing delivery drivers for the reasonably approximate costs of the business use of their vehicles, Defendants used a flawed method to determine reimbursement rates that neither reimburses the drivers for their actual expenses, nor at the IRS business mileage rate which is legally required and a reasonable approximation of those expenses. This

under-reimbursement causes their wages to fall below the federal and state minimum wage during some or all workweeks.

2. Plaintiff brings this lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and as a class action under the Pennsylvania Minimum Wage Act ("PMWA") 43 P.S. §§ 333.101 to 333.115, to recover unpaid minimum wages owed to Plaintiff and similarly situated delivery drivers employed by Defendants at their Domino's Pizza stores.

**Jurisdiction and Venue**

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that this case involves federal questions. This Court has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as Plaintiff's state law claims are so related to the federal claims that they form part of the same case or controversy.

4. Venue in this District is proper under 28 U.S.C. § 1391 because one or more defendants reside in the District.

**Parties**

5. Defendant, Sheldon Pizza, LLC, is a Pennsylvania limited liability company with a registered business address of 1301 Morre Street, Huntingdon, PA 16652.

6. Defendant, Port Pizza, LLC, is a Pennsylvania limited liability company with a registered business address of 1301 Morre Street, Huntingdon, PA 16652.

7. Upon information and belief, Defendant Sheldon Port is an adult individual and resident of the state of Missouri.

8. Upon information and belief, Defendant Sheldon Port is the owner and operator of both Shelon Pizza, LLC and Port Pizza, LLC.

9. Defendants Sheldon Pizza, LLC and Port Pizza, LLC were engaged in a joint enterprise at all times relevant to this complaint. The purpose of this joint enterprise was to operate a chain of Domino's pizza stores.

10. At all times material to this cause, Defendants Sheldon Pizza, LLC and Port Pizza, LLC were a special combination of two or more person or legal entities involved in a specific venture seeking to profit jointly without the existence between them of an actual partnership, corporation or business entity as a joint operation of a joint enterprise, joint venture or joint adventure having a community of interest and performance of a common purpose, joint control or right of control, joint proprietary interest in the subject matter and rights to share in the profits and a duty to share in the losses.

11. Defendants operate numerous Domino's pizza stores throughout Pennsylvania, including the Domino's pizza locations where Plaintiff worked in Northumberland County, Pennsylvania.

12. Plaintiff has been employed by Defendants from approximately April 2023 to present as a delivery driver. He first worked at Defendants' Domino's pizza store located at 2 Anthra Plaza, Ranshaw, PA 178866 before transferring to the location at 11183 PA-61, Mt Carmel, PA 17851. Plaintiff's consent to pursue this claim under the FLSA is attached to this Original Complaint as "Exhibit 1."

13. During Plaintiff's employment with Defendants, Defendants Sheldon Pizza, LLC and Port Pizza, LLC each earned more than $500,000.00 per year in gross sales.

14. During Plaintiff's employment with Defendants, Defendants Sheldon Pizza, LLC and Port Pizza, LLC each employed two or more employees which handled goods, materials and supplies which had travelled in interstate commerce.

15. Included in such goods, materials and supplies were food and drink products, cash registers, cleaning supplies, marketing materials, signs and other equipment and supplies needed to operate a pizza franchise and which originated from outside the state of Pennsylvania.

16. Therefore, Defendants Sheldon Pizza, LLC and Port Pizza, LLC are a covered enterprise as defined by the FLSA.

17. Defendant Sheldon Port is individually liable because, during the relevant times, he was an owner of substantial interests in Defendants J Sheldon Pizza, LLC and Port Pizza, LLC, served as officer of the entities, and held managerial responsibilities and had substantial control over terms and conditions of drivers' work as he held the power to hire and fire, supervised and controlled work schedules and/or conditions of employment, determined rates and methods of pay and/or expense reimbursements, and maintained employment records and/or held control over employment records. Defendant Port may be served at 9000 Moritz Ave, Saint Louis, MO 63144, or wherever he may be found.

## General Allegations

### *Defendants' Business*

18. Defendants operate numerous Domino's Pizza franchise stores in Pennsylvania, including stores within this District.

19. Defendants' Domino's Pizza stores employ delivery drivers who all have the same primary job duty: to deliver pizzas and other food items to customers' homes or workplaces.

### *Defendants' Flawed Automobile Reimbursement Policy*

20. Defendants require their delivery drivers to maintain and pay for safe, legally-operable, and insured automobiles when delivering pizza and other food items.

21. Defendants' delivery drivers incur costs for gasoline, vehicle parts and fluids, repair and maintenance services, insurance, depreciation, and other expenses ("automobile expenses") while delivering pizza and other food items for the primary benefit of Defendants.

22. Pursuant to the Department of Labor Field Operations Handbook, employers are required to either: (1) track and reimburse delivery drivers for their actual expenses, or (2) reimburse delivery drivers at the IRS business mileage reimbursement rate. *See Zellagui v. MCD Pizza, Inc.*, 59 F.Supp.3d 712, 716 (E.D. Pa. Nov. 3, 2014). Moreover, the IRS business mileage reimbursement rate represents the reasonable approximation of delivery drivers' actual expenses.

23. Defendants' delivery driver reimbursement policy reimburses drivers on a per-mile basis, but the reimbursement is not based on their actual expenses. Moreover, the reimbursement amount is below the IRS business mileage reimbursement rate or a reasonable approximation of the cost to own and operate a motor vehicle. This policy applies to all of Defendants' delivery drivers.

24. During the applicable FLSA limitations period (2022 – 2025), the IRS business mileage reimbursement rate ranged between $.585 and $.70 per mile.

25. Similarly, reputable companies that study the cost of owning and operating a motor vehicle and/or reasonable reimbursement rates, including the AAA, have determined that the average cost of owning and operating a vehicle ranged

between $.72 and $.82 per mile during the same period for drivers who drive 15,000 miles per year. *See* https://newsroom.aaa.com/wp-content/uploads/2021/08/2021-YDC-Brochure-Live.pdf (2022 driving cost analysis) and https://newsroom.aaa.com/wp-content/uploads/2024/09/YDC_Fact-Sheet-FINAL-9.2024.pdf (2024 driving cost analysis).[1] These figures represent a reasonable approximation of the average cost of owning and operating a vehicle for use in delivering pizzas.

26. However, the driving conditions associated with the pizza delivery business cause even more frequent maintenance costs, higher costs due to repairs associated with driving, and more rapid depreciation from driving as much as, and in the manner of, a delivery driver. Defendants' delivery drivers further experience lower gas mileage and higher repair costs than the average driver used to determine the average cost of owning and operating a vehicle described above due to the nature of the delivery business, including frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressures.

27. Defendants' reimbursement policy does not reimburse delivery drivers for even their ongoing out-of-pocket expenses, much less other costs they incur to own and operate their vehicle, and thus Defendants uniformly failed to reimburse its

[1] AAA's 2025 Driving Cost Analysis has not yet been released.

delivery drivers at any reasonable approximation of the cost of owning and operating their vehicles for Defendants' benefit.

28. Defendants' systematic failure to adequately reimburse automobile expenses constitutes a "kickback" to Defendants such that the hourly wages it pays to Plaintiff and Defendants' other delivery drivers are not paid free and clear of all outstanding obligations to Defendants.

29. Defendants failed to reasonably approximate the amount of its drivers' automobile expenses to such an extent that its drivers' net wages are diminished beneath the federal and state minimum wage requirements.

30. In sum, Defendants' reimbursement policy and methodology fail to reflect the realities of delivery drivers' automobile expenses.

***Defendants' Failure to Reasonably Reimburse Automobile Expenses Causes Minimum Wage Violations***

31. Regardless of the precise amount of the per-mile reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the federal and state minimum wage.

32. During the time Plaintiff worked for Defendants as a delivery driver Defendants utilized a "tip credit" and paid Plaintiff a sub-minimum wage of $6.00 per hour.

33. During the time Plaintiff has worked for Defendants as a delivery driver, he has been reimbursed on a per-mile basis. His current mileage reimbursement rate is $0.41 per mile.

34. During Plaintiff's employment (2023 – present), the IRS business mileage reimbursement rate ranged between $.655 and $.70 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using the lowest IRS rate and the most recent rate per mile Plaintiff has been making during his employment ($.41 per mile), every mile driven on the job decreased his net wages by ***at least*** $.245 ($.655 - $.41) per mile.

35. During his employment with Defendants, Plaintiff estimates, on average, he drove approximately 150-200 miles per day over 8-9 hour shift (i.e. he drove, on the low end, approximately 18.75 miles per hour). Thus, using even a conservative estimate of Plaintiff's actual expenses and damages, every hour on the job decreased Plaintiff's net wages by at least $4.59 ($.245 x 18.75 miles).

36. All of Defendants' delivery drivers had similar experiences to those of Plaintiff. They were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the minimum wage before deducting unreimbursed business expenses.

37. Because Defendants paid its drivers a gross hourly wage at or near the mandatory minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers “kicked back” to Defendants an amount sufficient to cause minimum wage violations.

38. While the amount of Defendants’ actual reimbursements per mile may vary over time, Defendants are relying on the same flawed policy and methodology with respect to all delivery drivers at all of its other Domino’s Pizza stores. Thus, although reimbursement amounts may differ somewhat by time or region, the amounts of under-reimbursements relative to automobile costs incurred are relatively consistent between time and region.

39. The net effect of Defendants’ flawed reimbursement policy is that Defendants have willfully failed to pay the mandatory minimum wage to their delivery drivers. Defendants thereby enjoy ill-gained profits at the expense of their employees.

## Collective Action Allegations

40. Plaintiff brings Count I as an “opt-in” collective action on behalf of similarly situated delivery drivers pursuant to 29 U.S.C. § 216(b).

41. The FLSA claims may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

42. Plaintiff, individually and on behalf of other similarly situated employees, seeks relief on a collective basis challenging Defendants' practice of failing to pay employees federal minimum wage. The number and identity of other plaintiffs yet to opt-in may be ascertained from Defendants' records, and potential class members may be notified of the pendency of this action via mail and electronic means.

43. Plaintiff and all of Defendants' delivery drivers are similarly situated in that:

a. They have worked as delivery drivers for Defendants delivering pizza and other food items to Defendants' customers;

b. They have delivered pizza and food items using automobiles not owned or maintained by Defendants;

c. Defendants required them to maintain these automobiles in a safe, legally-operable, and insured condition;

d. They incurred costs for automobile expenses while delivering pizzas and food items for the primary benefit of Defendants;

e. They were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

f. They were subject to the same pay policies and practices of Defendants;

g. They were subject to the same delivery driver reimbursement policy that under-estimates automobile expenses per mile, and thereby systematically deprived of reasonably approximate reimbursements, resulting in wages below the federal minimum wage in some or all workweeks;

h. They were reimbursed similar set amounts of automobile expenses per delivery; and

i. They were paid at or near the federal minimum wage before deducting unreimbursed business expenses.

**Class Action Allegations**

44. Plaintiff brings Count II as a class action on behalf of similarly situated delivery drivers pursuant to Federal Rule of Civil Procedure 23.

45. Specifically, Plaintiff brings this action on behalf of all delivery drivers who worked for Defendants in Pennsylvania during the last three years ("Class Plaintiffs" or "the Class").

46. The class is so numerous that the joinder of all Class Plaintiffs is impracticable.

47. Plaintiff does not know the exact number of Class Plaintiffs, as such information is in Defendants' control, but Plaintiffs believe the number of Class Plaintiffs is in the hundreds.

48. There are substantial questions of fact and law common to Plaintiff and all class members, including, inter alia, whether Defendants' compensation practices complied with Pennsylvania law, and the amount by which their hourly wages were below Pennsylvania law.

49. The claims of Plaintiff are typical of the Class as his claims are the exact claims that other members of the Class will have.

50. Plaintiff will fairly and adequately protect the interests of the Class. His claims span the breadth of issues raised in this action.

51. Class representatives' counsel are appropriately qualified to represent the Class.

52. Joinder of class members' individual actions is impractical because of the limited ability of individual class members to institute separate suits and the general nature of the underlying action and relief sought.

53. The prosecution of separate actions by individual class members would create a risk of inconsistent results that could establish incompatible standards of conduct for Defendants.

54. Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

55. Defendants' liability for damages can be established by facts and circumstances common to the Class as a whole and does not require the examination of the Plaintiffs' individual circumstances.

56. Questions of law and fact common to members of the Class predominate over any questions affecting only individual members.

57. A class action is superior in this case to other methods for a fair and efficient adjudication of the controversy because: (A) the common interests of the class members predominate over any individual interest in controlling prosecution or control of separate actions; (B) no similar litigation between the parties concerning the controversy is known to have been commenced by members of the Class; (C) concentrating litigation of this action in this Court is appropriate to ensure appropriate, consistent, and efficient resolution of the issues raised in the state where the offending conduct occurred, continues to occur, and could occur in the future; and (D) there will be no significant difficulties in managing an action involving this Class.

**Count I: Violation of the Fair Labor Standards Act of 1938**
**(Collective Action Claim)**

58. Plaintiff reasserts and re-alleges paragraphs one (1) through fifty-seven (57) set forth above.

59. The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or

engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §206(a).

60. Defendants are subject to the FLSA's minimum wage requirements because they are enterprises engaged in interstate commerce, and their employees are engaged in commerce.

61. At all relevant times herein, Plaintiff and all other similarly situated delivery drivers have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

62. Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations. None of the FLSA exemptions apply to Plaintiff or other similarly situated delivery drivers.

63. As alleged herein, Defendants have reimbursed delivery drivers less than either (1) their actual expenses, or (2) the IRS business mileage rate, which is a reasonably approximate amount of their automobile expenses. This under-reimbursement diminishes these employees' wages beneath the applicable minimum wage.

64. Defendants knew or should have known that its pay and reimbursement policies, practices and methodology result in failure to compensate delivery drivers at the applicable minimum wage.

65. Defendants, pursuant to their policy and practice, violated the FLSA by refusing and failing to pay the applicable minimum wage to Plaintiff and other similarly situated employees.

66. Plaintiff and all similarly situated delivery drivers are victims of a uniform and employer-based compensation and reimbursement policy. This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all delivery driver employees in Defendants' stores.

67. Plaintiff and all similarly situated employees are entitled to damages equal to the minimum wage minus actual wages received after deducting reasonably approximated automobile expenses within three years from the date each Plaintiff joins this case, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard for, whether its conduct was unlawful.

68. Defendants have acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages under 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants not liable for liquidated damages, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

69. As a result of the aforesaid willful violations of the FLSA's minimum wage provisions, minimum wage compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees. Accordingly, Defendants are liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiff and the Class demand judgment against Defendants and pray for: (1) compensatory damages; (2) liquidated damages, (3) costs of litigation and attorney's fees as provided by law; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

**Count II: Violation of the Pennsylvania Minimum Wage Act**
**(Class Action Claim)**

70. Plaintiff reasserts and re-alleges paragraphs one (1) through fifty-seven (57) set forth above.

71. At all times relevant herein, Defendants were the "employer" of Plaintiff and the Class Plaintiffs as that term is set forth in the PMWA.

72. As set forth above, as a result of Defendants' unlawful mileage reimbursement policy, Defendants have committed a violation of the PMWA in that Defendants failed to pay Plaintiff and the Class Plaintiffs the applicable Pennsylvania minimum wage.

73. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the Class Plaintiffs have suffered and will continue to suffer a loss of income and other damages.

74. For the foregoing reasons, Plaintiffs and the Class Plaintiffs are entitled to the recovery of their unpaid minimum wages, reasonable attorneys' fees, and costs for pursuing their rights set forth in the PMWA.

WHEREFORE, Plaintiff and the Class demand judgment against Defendants and pray for: (1) compensatory damages; (2) costs of litigation and attorney's fees as provided by law; (3) pre-judgment and post-judgment interest as provided by law; and (4) such other relief as the Court deems fair and equitable.

**Demand for Jury Trial**

Plaintiff hereby requests a trial by jury of all issues triable by jury.

Dated this 28th day of August, 2025.

Respectfully submitted,

MORGAN & MORGAN, P.A.

**/s/ ANGELI MURTHY**
**Angeli Murthy, Esq.**
PA Bar No.: 93699
8151 Peters Road, Suite 4000
Plantation, Florida 33324
Telephone: (954) 327-5369
Facsimile: (954) 327-3016
Email: AMurthy@forthepeople.com

*LOCAL COUNSEL FOR PLAINTIFF AND THE COLLECTIVE*

**/s/ C. RYAN MORGAN**
C. Ryan Morgan, Esq.
FBN 0015527
*(application for admission forthcoming)*
Jolie N. Pavlos, Esq.
*(application for admission forthcoming)*
FBN 0125571
Morgan & Morgan, P.A.
20 N. Orange Ave., 15th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Telephone: (407) 420-1414
Facsimile: (407) 245-3401
Email: RMorgan@forthepeople.com
JPavlos@forthepeople.com

*ATTORNEYS FOR PLAINTIFF AND THE CLASS*